1    IN THE UNITED STATES DISTRICT COURT

2    FOR THE NORTHERN DISTRICT OF CALIFORNIA

3    GEORGE HAMILTON,                          )         No. C 02-5602 SBA (PR)
                                                )
4              Plaintiff,                       )
                                                )         **ORDER OF DISMISSAL**
5    v.                                         )
                                                )
6    R .J. HERNANDEZ, Chief Deputy Warden, et al., )
                                                )
7              Defendants.                      )
                                                )
8    _____   )

9                              **BACKGROUND**

10        In an Order dated March 31, 2004, the Court outlined the procedural background of the

11   instant case as follows:

12        Plaintiff George Hamilton filed a <u>pro se</u> civil rights action pursuant to 42
          U.S.C. § 1983 on August 23, 2000.  <u>See</u> <u>Hamilton v. Hernandez</u>, C 00-3030 SBA
13        (PR).  At the time, he was incarcerated at Salinas Valley State Prison (SVSP) in
          Soledad, California, but he was later transferred to the Substance Abuse Treatment
14        Facility in Corcoran, California (SATF).  On March 30, 2001, the Court dismissed
          Plaintiff's complaint with leave to amend.  On April 27, 2001, the Court granted
15        Plaintiff a 30-day extension of time to file the amended complaint.  On July 10,
          2001, the Court found that Plaintiff had stated cognizable supplemental claims
16        against prison officials at SATF, including a claim that SATF officials were
          interfering with Plaintiff's efforts to prosecute his claims against the SVSP
17        defendants.  The Court decided to exercise jurisdiction over the SATF claims
          because they were closely related to Plaintiff's original claims against prison
18        officials at SVSP.  The Court ordered the SATF warden to respond to Plaintiff's
          denial of access claim and took under submission the question of whether Plaintiff
19        should be granted an extension of time to amend his original complaint until SATF
          officials stopped impeding him from doing so.
20
              Thereafter, Plaintiff complained of continuing interference by SATF
21        officials with his access to the courts.  The Court then granted Plaintiff an indefinite
          extension of time to file an amended complaint regarding his claims against SVSP
22        defendants until the denial of access allegations could be resolved.

23            On November 13, 2002, the Court reconsidered its decision to exercise
          jurisdiction over Plaintiff's claims against the SATF defendants, because those
24        claims had come to dominate the litigation.  The Court severed the SATF claims
          from action 00-3030 and ordered them filed in a new civil rights action, this one.
25        Action 00-3030, which then consisted solely of claims claims [sic] against the
          SATF defendants, was transferred to the United States District Court for the Eastern
26        District of California.  The Court stayed this action on the following terms:

27            [This action is] STAYED and ADMINISTRATIVELY
          TERMINATED pending resolution of Plaintiff's SVSP-related
28        denial of access to the courts claims in action 00-3030.

1

> Alternatively, Plaintiff may request that the Court lift the stay whenever he is prepared to file an amended complaint reasserting his SVSP claims, that is, once he gains access to the legal materials he needs to prepare such a complaint. Plaintiff shall file quarterly reports (i.e., every three months) in the stayed action apprising the Court of the progress of the transferred action as far as his SVSP-related denial of access to the courts claims are concerned.

2

3

4

> Action 00-3030, Third Order of Service & Order Severing Claims and Transferring Action to E. Dist. of Cal. at 5, ¶8 (filed in this action in Docket #1 behind complaint). The first quarterly report was due on February 13, 2003.

5

6

7   (Mar. 31, 2004 Order at 1-2. )

8        In an Order dated March 31, 2004, the Court issued an order to show cause why the case

9   should not be dismissed for Plaintiff's failure to comply with the Court's Order to file quarterly status

10   reports. The Court also denied without prejudice Plaintiff's pending motions regarding alleged

11   constitutional violations at state prisons that are located in the Eastern District of California and

12   admonished Plaintiff that "he must not press claims in this Court regarding alleged constitutional

13   violations occurring in state prisons located in other judicial districts, or he may be designated a

14   vexatious litigant and become subject to a prefiling order." (Id. at 5.)

15        On April 22, 2004, Plaintiff filed a response to the Court's order to show cause and began

16   filing quarterly status reports.

17        In an Order dated February 2, 2007, the Court lifted the stay in the instant action entered in

18   November, 2002, and directed the Clerk of the Court to reopen the file. The Court directed Plaintiff

19   to file the requisite amended complaint and any supporting documentation no later than thirty days

20   from the date of the Order. The Court stated that he should "allege all facts and claims, specifically

21   addressing any facts relevant to his SVSP claims under 42 U.S.C. §1983." (Feb. 2, 2007 Order at 3.)

22        Thereafter, after being granted two extensions of time to do so, Plaintiff filed his amended

23   complaint. The Court now reviews his amended complaint.

24                                **STANDARD OF REVIEW**

25        A federal court must conduct a preliminary screening in any case in which a prisoner seeks

26   redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C.

27   § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that

28   are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1  relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).

2       To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements:

3  (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the

4  alleged violation was committed by a person acting under the color of State law.  West v. Atkins,

5  487 U.S. 42, 48 (1988).  Pro se pleadings must be construed liberally.  Balistreri v. Pacifica Police

6  Dep't, 901 F.2d 696, 699 (9th Cir. 1988).

7                                              **DISCUSSION**

8       First, the Court notes that the claims in Plaintiff's amended complaint mirrors some of the

9  claims in his original complaint in Case no. C 00-3030 SBA (PR).  However, a number of those

10  claims were previously dismissed in the Court's March 30, 2001 Order Dismissing Complaint With

11  Leave to Amend in Case no. C 00-3030 SBA (PR).  Therefore, the Court will refer to its March 30,

12  2001 Order when reviewing his claims, beginning with this brief background:

13       Plaintiff alleges a series of incidents in which SVSP correctional officers
14  interfered with his right to practice his religion, or harassed or retaliated against him
     based on his religious practices or based on complaints, grievances, or legal actions
15  he filed against prison authorities.  Plaintiff is a member of the House of Yahweh
     (HOY), a religious denomination headquartered in Texas, which relies on the first
16  five books of the Old Testament as its primary religious text.  HOY members are
     expected to comply with "Yahweh's 613 Laws," which have been derived from
17  rules set forth in those Biblical books.  SVSP has recognized HOY as an approved
     inmate religious activity group, and has set forth procedures to permit HOY
18  members incarcerated at SVSP to gather for Sabbath Services on Saturdays, has
     designated Chaplain Bethancourt to coordinate and schedule HOY activities, and
19  has recognized Allen B. Williams, who is currently Plaintiff's cell mate, as an
     inmate minister for the HOY group.  In addition to his participation in this religious
20  group, Plaintiff's role in circulating an inmate petition and presenting it to Governor
     Gray Davis and members of the state legislature allegedly caused Defendants to
21  retaliate against him.

22  (Mar. 30, 2001 Order in Case no. C 00-3030 SBA (PR) at 4.)

23  **I.    Plaintiff's Claims**

24       **A.    Plaintiff's Insistence on Cell Mate Who Observes Yahweh's 613 Laws**

25            **1.    Summary of Allegations**

26       The following summary is taken from the Court's March 30, 2001 Order in Case no.

27  C 00-3030 SBA (PR):

28       From April to November 2000, Plaintiff was embroiled in an ongoing
     conflict with prison authorities who were attempting to place him in a double cell

                                                3

with another inmate.  Correctional officers repeatedly asked Plaintiff to identify a compatible inmate with whom he could share a cell, and Plaintiff consistently stated that his cell mate (1) must be a Crip, (2) must be willing to use an upper bunk, because Plaintiff had a medical "chrono" indicating he should be assigned to a lower bunk; and (3) must be willing to comply with Yahweh's 613 Laws.  Those laws included the requirements that the inmate (a) never refer to "God," "Lord," or "Lord God," because those terms glorify Satan; (b) possess no holiday or birthday cards, because those items glorify Satan; and (c) observe the Sabbath (Saturday) by refraining from working, exercising, listening to the radio, or watching television on that day.  He claimed conflict would inevitably result if he were housed with an inmate who violated these laws.  Plaintiff alleges that when he explained the religious basis for his refusal to accept certain inmates as cell mates, Defendants dismissed his religious concerns and threatened to discipline him if he did not accept an inmate who was otherwise compatible.  Defendants often spoke to Plaintiff disrespectfully, frequently using profanity.

On May 1, 2000, Plaintiff was issued a Rules Violation Report (RVR), Log No. ASFD-00-04-140, for willfully obstructing a peace officer, based on his "refusal to accept a cell mate."  This disciplinary action was ultimately dismissed because the complaining officer had left the institution by the time of the hearing.  Plaintiff alleges that his due process rights were violated at the hearing, because he was not provided with a staff assistant.

On May 16, 2000, Plaintiff was issued another RVR, Log No. ASFD-00-05-012, for willfully obstructing a peace officer, again based on a conversation he had with a correctional officer in which he said he would only accept a cell mate who agreed to abide by Yahweh's 613 Laws.  Plaintiff was found guilty of this rule violation and lost 90 days of credits against his sentence.  Plaintiff alleges that his due process rights were violated at the hearing because he was not provided with a staff assistant.  He also alleges that Defendant Ponder, who conducted the hearing, told him at the outset that he should not bother appealing the discipline he was about to receive, because Defendant Tynes was the Chief Disciplinary Officer, and pronounced him guilty before he even asked Plaintiff how he pled to the charges.

On June 8, 2000, Defendant Hernandez told Plaintiff he would be released from administrative segregation to be housed in Facility C, where he would be placed in a double cell.  He warned Plaintiff that he would receive another RVR if he refused to accept a compatible cell mate.  When Plaintiff was released from administrative segregation the next day, he was placed in a cell with an inmate who did not agree to abide by Yahweh's 613 Laws and who was already occupying the cell's lower bunk.  After Plaintiff complained, he was placed in a single cell, apparently the same day.

On July 23, 2000, prison officials sent Allen B. Williams, the HOY minister, to Plaintiff's cell so the two inmates could determine if they were compatible cell mates.  Both inmates said they did not want to be relocated to another section of the prison, which would require them to forfeit their job assignments, and both stated they did not want to use an upper bunk.  Therefore, they took the position that they were not compatible cell mates.

On July 24, 2000, Plaintiff discovered another inmate in his cell when he returned from his job assignment.  Upon inquiring, he discovered that the other inmate was a Blood affiliate, was not an observer of Yahweh's 613 Laws, and had never been asked about his religious practices before he was placed in Plaintiff's cell.  Plaintiff alleges that when the other inmate learned Plaintiff was a member of

United States District Court
For the Northern District of California

1   a rival gang, he immediately picked up his property and asked an officer to remove
2   him from the cell.  When Plaintiff asked Defendant Davis about the incident, Davis
    laughed, claimed it was a mistake, and warned Plaintiff he would be issued another
3   RVR and would be placed on "C status" (with restricted privileges) if he refused to
    identify a compatible cell mate.

4           On July 26, 2000, Defendant Hernandez told Plaintiff that prison officials
5   were "fed up" with Plaintiff's complaints, and warned him that he would be issued
    another RVR and would be placed on C status if he refused to accept a compatible
6   cell mate.  At a classification hearing on the same date, Defendant Hedgpeth and
    another officer told Plaintiff he was going to be transferred because he was a
7   "program failure" and he had filed multiple complaints.  He was also told once
    again that he would be issued another RVR and would be placed on C status if he
8   refused a compatible cell mate.

9           On July 31, 2000, Plaintiff was issued another RVR, Log No. C-00-07-
    0071, for refusing a compatible cell mate, based on his comments to Correctional
10  Officer Negrette that his cell mate must agree to comply with Yahweh's 613 Laws.
    Apparently at the time Plaintiff filed his complaint on August 23, 2000, the hearing
11  on this RVR had not yet taken place.  Although Plaintiff has filed several additional
    documents describing events that have taken place since he filed his complaint, he
12  has not informed the Court that any discipline resulted from this RVR.

13          On November 30, 2000, Mr. Williams moved into Plaintiff's cell.  They
    remain cell mates.

14  (Mar. 30, 2001 Order in Case no. C 00-3030 SBA (PR) at 2-5.)

15          **2.    Placement in Cell with Allegedly Incompatible Cell Mates**

16          In his amended complaint, Plaintiff alleges the many of the same claims as in his original

17  complaint in Case no. C 00-3030 SBA (PR) relating to his insistence on a cell mate who observes

18  Yahweh's 613 Laws.  The Court notes that in its March 30, 2001 Order in Case no. C 00-3030 SBA

19  (PR), some of these claims were dismissed without leave to amend.  Therefore, the Court will only

20  address the related claim that was dismissed with leave to amend, which was his claim regarding

21  Plaintiff's placement in cell with allegedly incompatible cell mates.

22          The following summary is taken from the Court's March 30, 2001 Order in Case no.

23  C 00-3030 SBA (PR):

24          Plaintiff alleges that he twice was placed in a cell with an inmate who did
    not agree to follow Yahweh's 613 Laws, and in one case he was placed in a cell
25  with a member of a rival gang.  Plaintiff alleges that these incidents demonstrated
    deliberate indifference to his personal safety, because conflict was likely to develop
26  between him and those cell mates when Plaintiff insisted that the cell mates comply
    with Yahweh's 613 Laws.  He alleges that prison officials routinely ignored
27  conflicts between cell mates until they erupted into physical altercations, and thus
    alleges that housing him with incompatible cell mates necessarily placed him in
28  physical danger in violation of the Eighth Amendment.  See Farmer v. Brennan,

                                         5

511 U.S. 825, 832-33 (1994) (holding that Eighth Amendment requires prison officials take reasonable measures to protect prisoners' safety, including measures to protect prisoners from violence at the hands of other prisoners).

(Mar. 30, 2001 Order in Case no. C 00-3030 SBA (PR) at 7.)

In its March 30, 2001 Order in Case no. C 00-3030 SBA (PR), the Court dismissed this claim with leave to amend, stating:

> Even accepting Plaintiff's allegation that Defendants' permanent or long-term placement in cells with these inmates would have demonstrated deliberate indifference to his physical safety, the Court concludes that Plaintiff has not alleged cognizable claims in his complaint, because he alleges that he was promptly removed from the cells when he reported to prison guards that the inmates were not compatible cell mates. He does not allege facts that would have led prison guards to expect that physical conflict would immediately ensue if Plaintiff were housed with these inmates. Although one of the inmates was a member of a rival gang, that inmate reportedly immediately requested release from the cell when he learned of Plaintiff's gang affiliation.
>
> As part of an ongoing course of conduct, these incidents might amount to retaliatory threats or harassment, a question addressed in the next section, but standing alone they cannot support a claim for violation of Plaintiff's constitutional rights. Therefore, Plaintiff's claims based solely on Defendants' placing him in cells with incompatible cell mates are DISMISSED. If Plaintiff can in good faith allege additional facts demonstrating that he was placed in imminent danger to his physical safety during these incidents, he may reassert the claims in an amended complaint.

(Id. at 7-8.)

In his amended complaint, Plaintiff fails to show that he was placed in imminent danger to his physical safety during the incidents of being placed in cells with incompatible cell mates. For example, he includes facts regarding the June 9, 2000 incident where he was assigned a cell mate who "did not practice the House of Yahweh, or any other religion" and occupied the lower bunk. (Am. Compl. at 17.) Plaintiff then "informed the floor-staffs [sic]" of his problems with his cell mate, and after waiting for "several hour(s)," he was relocated to another cell. As to the July 24, 2000 incident where he was allegedly placed in the same cell as a rival gang member, Plaintiff claims that he and that cell mate discovered immediately that they were members of rival gang and alerted prison officials. It can be inferred that Plaintiff was never placed in imminent danger because they were separated almost immediately. The inmate had alerted prison staff once he discovered the conflict, and  he did not even bother to unpack his property. That inmate was then

1   able to quickly relocate once he was moved from Plaintiff's cell.  (Id. at 19.)  Therefore, the Court

2   finds that Plaintiff has failed to correct the deficiencies of his claims based solely on Defendants'

3   placing him in cells with incompatible cell mates.  Accordingly, his claims are DISMISSED with

4   prejudice and without further leave to amend.

5        **B.     Alleged Interference with Religious Services and Practices**

6             **1.     Summary of Allegations**

7        The following summary is taken from the Court's March 30, 2001 Order in Case no.

8   C 00-3030 SBA (PR):

9        Plaintiff has filed five declarations by Mr. Williams describing allegedly
     unconstitutional conduct directed against HOY members at SVSP, which has taken
10    place since the complaint was filed.  The Court considers the facts set forth in these
     declarations as if they were the allegations of a proposed supplemental complaint.[1]

11        On certain occasions in May and June 2000, prison officials refused to
12    release Plaintiff from his cell for Sabbath services, despite the fact that the
     procedures for releasing HOY members for services were set forth in an official
13    prison memorandum authorized by Defendant Hedgpeth, that Plaintiff was listed as
     an HOY member in that memorandum, and that the memorandum was distributed
14    by Mr. Williams to all necessary officers on the morning of the services.

15        In a memorandum dated December 22, 2000, Defendant Hedgpeth
16    authorized Plaintiff to act as a minister's assistant, which permitted Plaintiff to help
     Mr. Williams pick up and post sign-up lists and release memoranda for Sabbath
17    services, and distribute religious literature.  On January 26, 2001, however,
     Hedgpeth revoked this authorization, revoked another inmate's authorization to act
18    as a minister's assistant, and restricted the HOY group to 45 minutes of chapel use
     time for Sabbath services.  Mr. Williams alleges that these acts were taken in
19    retaliation for (1) Mr. Williams' filing a declaration in this action on December 12,
     2000; (2) Plaintiff's requests to local law enforcement agencies and to this Court
20    seeking the arrest of certain SVSP correctional officers; and (3) Plaintiff's request to
     Defendant Hedgpeth that he place Correctional Officer Beltran under arrest.

21        On February 13, 2001, Mr. Williams filed a complaint against Chaplain
22    Bethancourt based on his failure to assist the HOY group in obtaining religious
     literature and audio and video tapes from the HOY headquarters.  Despite repeated
23    requests, the chaplain had taken no action to obtain the materials.

24        On February 25, 2001, Mr. Williams filed a complaint against Sgt. Davis,
     based on a February 25, 2001 incident in the program office.  Mr. Williams was
25    using a typewriter in the office with Capt. Hedgpeth's permission, and had typed the
     heading "Attributes of YAHWEH" at the top of a piece of paper.  He was preparing

26

27        [1]  The Court notes that Plaintiff filed an "Application to Join Declaration of Allen B. Williams
     in Support of Civil Complaint and Motions for Injunctive Relief" on December 19, 2000, the same date
28    Mr. Williams' first declaration was filed, and both Plaintiff and Mr. Williams signed Mr. Williams' last
     two declarations, which were both filed on March 29, 2001.

a document for use during Sabbath services.  Sgt. Davis told Mr. Williams he was not authorized to use the typewriter to type religious tracts and ordered him out of the office.  Sgt. Davis also told Mr. Williams he had to make any photocopies at the law library.  In a memorandum dated March 9, 2001, Hedgpeth declared that, as of March 12, 2001, Mr. Williams was denied access to the program office to conduct clerical duties.

In his February 26, 2001 declaration, Mr. Williams states that both he and Plaintiff have been denied release to attend Sabbath services on numerous occasions, which results in cancellation of the services because Mr. Williams is the minister who conducts the services.  He states that Defendants Hernandez, Negrete, Cerda and Hoover are among those responsible, but he does not identify specific wrongful acts by any of these Defendants.

On March 3, 2000, Plaintiff and Mr. Williams were released from their cells to attend Sabbath services, but the security gate officer would not release them from their yard because he did not have the release memorandum that Mr. Williams had distributed to the tower office that morning.  Mr. Williams found the memorandum crumpled up into a ball and partially hidden among some boxes.  When he presented it to the tower officer, he and Plaintiff were released.  When they arrived at the chapel, however, they found the entrance door was still locked.  When Mr. Williams asked an officer to unlock the door, he was told the officer who had the key was on an errand.  The inmates who came to attend Sabbath services were forced to stand in the cold and in a light rain for 10 to 15 minutes until the door was unlocked.  Sgt. Davis told the officer who unlocked the door that he should only let Plaintiff and Mr. Williams enter the chapel and should make the other inmates wait outside.  Mr. Williams apparently convinced the officer to let everyone in.

Once the service got underway, Sgt. Davis called Mr. Williams into his office and asked to see the approved roster for that day's services.  Mr. Williams explained that the memorandum had been distributed to the housing buildings, and that Captain Hedgpeth had approved attendance by more than 25 inmates.  Sgt. Davis insisted that "we in custody run the show."  When Mr. Williams explained that he did not want to engage in an argument on the Sabbath, Sgt. Davis ordered him to sit down and listen, or he would be handcuffed and returned to his cell.  When Mr. Williams again said he did not want to engage in an argument on the Sabbath, Mr. Williams was handcuffed and placed in a holding cage.  He apparently was released later that day.  Mr. Williams states that Sgt. Davis has been involved in previous acts of harassment, including the "loss" of Mr. Williams' property when he was placed in administrative segregation on August 3, 2000; the denial of library access; and the denial of program privileges on C yard.

In his February 26, 2001 declaration, Mr. Williams states that prison guards have repeatedly failed to provide Plaintiff and him with meals that conform to the dietary requirements of their religious faith.  Even though they have filed Inmate/Parolee Appeal Forms ("602 appeals") on this matter that have been resolved in their favor, the appeals decisions are not honored by the correctional officers who provide the meals.

(Mar. 30, 2001 Order in Case no. C 00-3030 SBA (PR) at 9-12 (footnote in original).)

## 2.   **Related Claims**

The Court will only address the related claims that were dismissed with leave to amend,

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   which were his claims relating to: (a) interference with HOY Sabbath Services; (b) denial of access

2   to the program office and similar privileges; and (c) religious dietary requirements.

3   **(a)     Interference with HOY Sabbath Services**

4        The following legal standard is taken from the Court's March 30, 2001 Order in Case no.

5   C 00-3030 SBA (PR):

6        In order to establish a free exercise violation, a prisoner must show the
7   defendants burdened the practice of his religion, by preventing him from engaging
    in conduct mandated by his faith, without any justification reasonably related to
    legitimate penological interests.  See Freeman v. Arpaio, 125 F.3d 732, 736 (9th
8   Cir. 1997).  To reach the level of a constitutional violation, "the interference with
    one's practice of religion 'must be more than an inconvenience; the burden must be
9   substantial and an interference with a tenet or belief that is central to religious
    doctrine.'"  Id. at 737 (quoting Graham v. C.I.R., 822 F.2d 844, 851 (9th Cir.
10  1987)).

11       Inmates of the same religious faith have no absolute right to gather for
    religious services.  Such services may be banned if the prison has a legitimate
12  penological interest in doing so.  See Anderson v. Angelone, 123 F.3d 1197, 1198
    (9th Cir. 1997) (upholding regulation prohibiting inmate-led religious activities
13  where state contended that the regulation addressed legitimate security concerns
    that inmate-led religious services could be a cover for unlawful activity and that an
14  inmate leading religious services could inflame or unduly influence other
    prisoners); McCabe v. Arave, 827 F.2d 634, 637 (9th Cir. 1987) (prison regulation
15  prohibiting Church Jesus Christ Christian inmates from group worship and group
    study reasonably related to legitimate penological needs).

16
         The Equal Protection Clause requires that an inmate who is an adherent of a
17  minority religion be afforded a "reasonable opportunity of pursuing his faith
    comparable to the opportunity afforded fellow prisoners who adhere to the
18  conventional religious precepts," Cruz v. Beto, 405 U.S. 319, 322 (1972) (Buddhist
    prisoners must be given opportunity to pursue faith comparable to that given
19  Christian prisoners); Freeman, 125 F.3d at 737, as long as the inmate's religious
    needs are balanced against the reasonable penological goals of the prison, see
20  O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987); Allen v. Toombs, 827 F.2d
    563, 568-69 (9th Cir. 1987) (finding no Equal Protection violation where providing
21  equal access to religious services for Native American inmates involved exposing
    high-risk inmates to hot coals, an axe and a pitchfork).  Nevertheless, it does not
22  follow that a prison must duplicate every religious benefit it provides so that all
    religions are treated exactly the same.  See Cruz, 405 U.S. at 322 & n.2; Freeman,
23  125 F.3d at 737; Allen, 827 F.2d at 568.

24  (Mar. 30, 2001 Order in Case no. C 00-3030 SBA (PR) at 12-13.)

25       Also in its March 30, 2001 Order in Case no. C 00-3030 SBA (PR), the Court analyzed

26  Plaintiff's claims as follows:

27       Plaintiff alleges several incidents of interference with HOY Sabbath
    services, for which there appear to be no legitimate penological justifications.  Such
28  incidents include the prison's alleged repeated failures to release Plaintiff and

9

1    Mr. Williams from their cells or prison buildings for services, and the March 3,
2    2001 incident in which Sgt. Davis removed Mr. Williams from the chapel, which
     resulted in the cancellation of services that day.  The revocation of Plaintiff's
3    designation as a minister's assistant may also constitute interference, if
     Mr. Williams needed Plaintiff's assistance to distribute and post the memoranda that
4    permitted inmates to attend services.  Finally, the restriction of the services to 45
     minutes may constitute infringement of free exercise rights if services cannot
5    reasonably be conducted in that time period and the prison had no legitimate
     penological interest in restricting chapel access.  Plaintiff may assert these claims in
6    an amended complaint, but he must first exhaust his administrative remedies by
     filing prison grievances challenging each alleged act of interference.  See 42 U.S.C.
7    § 1997e(a).

8            The allegations of restrictions on Plaintiff's ability to attend HOY services
     may also support an Equal Protection claim.  If Plaintiff can in good faith allege
9    that prison officials treated HOY members differently from inmates of other
     religions, and had no legitimate penological purpose in doing so, he may assert an
10   Equal Protection claim in an amended complaint.  Plaintiff should identify other
     religious groups that are granted favorable treatment and identify the privileges that
11   are granted on an unequal basis.  Moreover, Plaintiff must first exhaust his
     administrative remedies on this issue by filing prison grievances challenging each
12   alleged act of disparate treatment.

13   (Id. at 13.)

14          In his amended complaint, Plaintiff again alleges similar instances of interference with HOY

15   Sabbath Services.  In its March 30, 2001 Order in Case no. C 00-3030 SBA (PR), the Court directed

16   him to show that there was no legitimate penological justification for the Defendants' interfering

17   with HOY Sabbath Services.  Plaintiff has not done so.  Even after being given an opportunity to

18   amend his claims, he has also failed to support his claims with specific dates during which the

19   alleged violations took place.  He also makes conclusory allegations, such as Defendants

20   "[c]orruptly engaged in a pattern of schemes to disrupt the Sabbath Services."  (Am. Compl. at 26.)

21   Sweeping conclusory allegations will not suffice; Plaintiff must instead "set forth specific facts as to

22   each individual [D]efendant's" deprivation of protected rights.  See Leer v. Murphy, 844 F.2d 628,

23   633 (9th Cir. 1988).   Plaintiff also claims that Defendants "corruptly limited chapel time," but he

24   does not explain how any alleged restriction of the services constituted infringement of his free

25   exercise rights because he fails to amend his claim to allege that the prison had no legitimate

26   penological interest in restricting chapel access.  Plaintiff also fails to show that he exhausted his

27   administrative remedies by filing prison grievances challenging each alleged act of interference.

28          As to his Equal Protection claim, Plaintiff has also failed to identify other religious groups

10

United States District Court
For the Northern District of California

1   that are granted favorable treatment or to identify the privileges that are granted on an unequal basis.

2   Again, he fails to show that he exhausted his administrative remedies by filing prison grievances

3   challenging each alleged act of disparate treatment.

4          Therefore, the Court finds that Plaintiff has failed to correct the deficiencies of his claims

5   relating to Defendants' interference with HOY Sabbath Services.  Accordingly, his claims are

6   DISMISSED with prejudice and without further leave to amend.

7                    **(b)**          **Denial of Access to Program Office and Similar Privileges**

8          In its March 30, 2001 Order in Case no. C 00-3030 SBA (PR), the Court analyzed Plaintiff's

9   claims as follows:

10              The allegations that HOY members were denied certain privileges -- e.g.,
        restrictions on Mr. Williams' use of the program office; revocation of Plaintiff's and
11      another inmate status as minister's assistants; and Chaplain Bethancourt's failure to
        assist HOY members in obtaining religious tapes and literature -- may support a
12      Equal Protection claim if Plaintiff can in good faith allege that other inmates of
        other religious faiths received substantially greater privileges, and that there was no
13      legitimate penological justification for the disparate treatment.  These allegations
        will support a Free Exercise claim only if Plaintiff can in good faith allege that the
14      denial of privileges substantially burdened or interfered with a central practice of
        the HOY faith, without any legitimate penological justification.  Plaintiff may assert
15      these claims in an amended complaint only if he was personally and concretely
        injured by the alleged unconstitutional conduct,  see Lujan v. Defenders of Wildlife,
16      504 U.S. 555, 560-61 (1992), and he must exhaust his administrative remedies
        before presenting the claims in federal court.
17

18   (Mar. 30, 2001 Order in Case no. C 00-3030 SBA (PR) at 13-14.)

19          In his amended complaint, Plaintiff again raises similar claims relating to the denial of access

20   to the program office and other similar privileges, such as Defendants' "refus[al] to purchase and

21   order religious material published by The House of Yahweh."  (Am. Compl. at 26.)  However,

22   Plaintiff does not allege that other inmates of other religious faiths received substantially greater

23   privileges, and that there was no legitimate penological justification for the disparate treatment.

24   While he again alleges that Defendants "corruptly limited chapel time," and "corruptly limited the

25   number of inmates who desired to attend chapel services, to no more than 25 inmates," (id.), Plaintiff

26   fails to allege that the denial of privileges substantially burdened or interfered with a central practice

27   of the HOY faith, without any legitimate penological justification.  Furthermore, he fails to claim

28   that he exhausted his administrative remedies before presenting the claims in federal court.  Thus, he

United States District Court
For the Northern District of California

1   fails to correct the deficiencies of his claims relating to the denial of access to the program office and

2   similar privileges.  Accordingly, his claims are DISMISSED with prejudice and without further

3   leave to amend.

4                   **(c)      Religious Dietary Requirements**

5        In its March 30, 2001 Order in Case no. C 00-3030 SBA (PR), the Court analyzed Plaintiff's

6   claim as follows:

7        Inmates "have the right to be provided with food sufficient to sustain them
        in good health that satisfies the dietary laws of their religion."  McElyea v. Babbitt,
8        833 F.2d 196, 198 (9th Cir. 1987).  Allegations that prison officials refuse to
        provide a healthy diet conforming to sincere religious beliefs states a cognizable
9        claim under § 1983 of denial of the right to exercise religious practices and beliefs.
        See id.  The burden then falls on the prison officials to prove that the burden on
10       plaintiff's exercise of religion was reasonably related to a legitimate penological
        objective.  See Ashelman v. Wawrzaszek, 111 F.3d 674, 677-78 (9th Cir. 1997).

11
        Plaintiff alleges that prison officials have repeatedly failed to provide meals
12       that conform to their religious dietary requirements, but he does not allege that he
        was denied a healthy diet conforming to those requirements.  For example,
13       Mr. Williams' February 26, 2001 declaration specifies that, as a result of a 602
        appeal, HOY inmates were authorized to receive peanut butter packs, yet the prison
14       guards have refused to honor this authorization.  Plaintiff, however, fails to allege
        that in the absence of the peanut butter packs his meals did not provide him with a
15       healthy diet that conformed to his religious dietary requirements.  Plaintiff may
        assert a claim that prison officials have not provided a healthy diet conforming to
16       HOY religious dietary requirements only if he can make the necessary allegations
        in good faith, and can demonstrate that he has exhausted his administrative
17       remedies with respect to the alleged violations.

18  (Mar. 30, 2001 Order in Case no. C 00-3030 SBA (PR) at 14.)

19       In his amended complaint, Plaintiff claims that Defendants "corruptly refused to honor . . .

20  CDC-602(s) for all House of Yahweh members to be provided [meat substitutes] despite having

21  first-hand knowledge that CDCR provided [meats] not in scriptural compliance with Yahweh's

22  dietary laws."  (Am. Compl. at 26.)  While Plaintiff alleges that he was not provided with "meat

23  substitutes," he fails to assert that prison officials did not provided a healthy diet conforming to

24  HOY religious dietary requirements.  Plaintiff merely claims that he "was not eating food portions,

25  that could sustain him in proper health, as [he] attempted to comply with Yahweh's dietary laws, by

26  not consuming defiled meat items . . . ."  (Id. at 27.)   He also fails to demonstrate in his amended

27  complaint that he has exhausted his administrative remedies with respect to the alleged violations.

28  Thus, he fails to correct the deficiencies of his claims relating to Defendants' failure to conform to

1   his religious dietary requirements.  Accordingly, his claims are DISMISSED with prejudice and

2   without further leave to amend.

3        **C.**    **Alleged Retaliation for Legal Activity**

4             **1.**     **Summary of Allegations**

5        The following summary is taken from the Court's March 30, 2001 Order in Case no.

6   C 00-3030 SBA (PR):

7          Plaintiff alleges that, at a May 11, 2000 classification hearing, Defendant
     Tynes threatened to transfer Plaintiff to an institution far from his family and

8        friends in retaliation for his legal activity, specifically the class action petition
     Plaintiff circulated and sent to Governor Gray Davis and members of the state

9        legislature.  At a July 26, 2000 classification hearing, Defendant Hedgpeth and
     another officer told Plaintiff he was going to be transferred because he was a

10       "program failure" and he had filed multiple complaints.  At a February 10, 2001
     classification hearing, prison officials apparently announced firm plans to transfer

11       Plaintiff to High Desert or Pelican Bay State Prison, in far northern California, far
     from his family and social ties in Fresno, California.  On April 3, 2001,

12       Mr. Williams filed a declaration reporting that Plaintiff had been transferred on
     March 29, 2001 to California State Prison, Corcoran, in the Central Valley.

13       Although Plaintiff has not been transferred  to a prison remote from his social
     network, Mr. Williams nevertheless contends the transfer was retaliatory.

14

15         On December 28, 2000, Officer Beltran allegedly threatened Plaintiff while
     escorting him to the prison law library, stating, "I could have your stupid-ass shot."

16       Mr. Williams states in his February 26, 2001 declaration that Correctional Officer
     Beltran has prevented Plaintiff and Mr. Williams from entering the law library in
     soft-sole tennis shoes until they have produced proof that they were authorized to

17       wear such shoes.  He claims this interfered with their ability to use the law library,
     by cutting into their limited time in the library, and constituted harassment.

18

19         In the February 26, 2000 declaration, Mr. Williams states that Correctional
     Officer Farias has repeatedly failed to release Plaintiff on time for his job

20       assignment and sometimes fails to release him at all, even though other inmates are
     timely released.  Further, during modified program, Plaintiff is excluded from the

21       list of critical culinary workers.  Mr. Williams asserts this disparate treatment is
     racially motivated.

22         Mr. Williams states that correctional officers have ordered inmates to "lock
     up in their cells" when they have observed Plaintiff talking to "the tier tenders,"

23       because they suspect that Plaintiff is engaging in legal discussions, and he alleges
     that Plaintiff's legal mail has been opened outside Plaintiff's presence on numerous

24       occasions.

25  (Mar. 30, 2001 Order in Case no. C 00-3030 SBA (PR) at 15-16.)

26            **2.**     **Related Claims**

27       The Court will only address the related claims that were dismissed with leave to amend,

28

**United States District Court**
For the Northern District of California

1  which were his claims relating to: (a) retaliatory transfer; (b) verbal threats of violence; and (c) other

2  allegations.

3                    **(a)    Retaliatory Transfer**

4         In its March 30, 2001 Order in Case no. C 00-3030 SBA (PR), the Court analyzed Plaintiff's

5  claim as follows:

6         Retaliation by a state actor for the exercise of a constitutional right is
       actionable under 42 U.S.C. § 1983, even if the act, when taken for different reasons,
7      would have been proper.  See Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S.
       274, 283-84 (1977).  Plaintiff alleges that prison officials three times expressly
8      threatened to transfer him to a prison far removed from his family and friends in
       retaliation for activity protected by the First Amendment in May and June 2000 and
9      again in February 2001.  Mr. Williams, however, just informed the Court that
       Plaintiff was transferred on March 29, 2001 to a prison in the Central Valley, close
10     to his family and friends.  Mr. Williams continues to claim that the transfer was
       retaliatory, but he does not explain how it affected Plaintiff adversely.  Plaintiff
11     may assert a claim for retaliatory transfer in an amended complaint only if he can
       provide such an explanation, and only after he has exhausted his administrative
12     remedies with respect to the transfer.

13  (Id. at 16.)

14         In his amended complaint, Plaintiff again claims that on March 29, 2001, he was transferred

15  to the California Substance Abuse Treatment Facility (SATF) in Corcoran, California.  However, as

16  mentioned above, Plaintiff's transfer brought him closer to his family and friends.  Plaintiff was

17  directed to explain how the transfer affected him adversely in order to show that it was a retaliatory

18  transfer.  Plaintiff does not do so in his amended complaint.  He has also failed to show that he has

19  exhausted his administrative remedies with respect to the transfer.  Instead, Plaintiff claims that

20  during his incarceration at SATF from March 29, 2001 through January 8, 2003, SATF prison staff

21  "in bad faith, seized, withheld and possessed all filed . . . documents concerning this litigation,

22  which obstructed [his] ability to comply with this Court's orders and prosecute this civil action."

23  (Am. Compl. at 27.)  However, such allegations of denial of meaningful access to the Courts is not

24  proper in an amended complaint.  Instead, Plaintiff must pursue such claims in a new action filed in

25  the United States District Court for the Eastern District of California because the alleged violations

26  giving rise to his claim occurred at SATF, which is located in the Eastern District.

27         Plaintiff fails to correct the deficiencies of his claims for retaliatory transfer.  Accordingly,

28  his claim is DISMISSED with prejudice and without further leave to amend.

1

                **(b)**       **Verbal Threat of Violence**

2

In its March 30, 2001 Order in Case no. C 00-3030 SBA (PR), the Court analyzed Plaintiff's

3

claim as follows:

4

> A death threat made when the party has both the opportunity to carry out the
> threat and evidences the intent to do so does state a cognizable claim.  See Burton

5

> v. Livingston, 791 F.2d 97, 100-01 (8th Cir. 1986) (drawing gun and terrorizing
> prisoner with threats of death while using racially offensive language presents

6

> cognizable claim).  Plaintiff alleges that Officer Beltran told him, "I could have
> your stupid-ass shot."  He does not, however, allege sufficient circumstantial facts

7

> to establish that Officer Beltran had both the opportunity to carry out the threat and
> the intent to do so.  Plaintiff may assert a retaliation claim based on this incident

8

> alone only if he can in good faith allege sufficient supporting facts.  If he plans to
> assert such a claim in an amended complaint, he must first exhaust any

9

> administrative remedies available to him.

10

(Mar. 30, 2001 Order in Case no. C 00-3030 SBA (PR) at 16.)

11

Plaintiff fails to amend this claim in his amended complaint.  In fact, he no longer names

12

Officer Beltran as a Defendant in this action.  Therefore, his retaliation claim based on this incident

13

alone is DISMISSED with prejudice and without further leave to amend.

14

                **(c)**       **Other Allegations**

15

In its March 30, 2001 Order in Case no. C 00-3030 SBA (PR), the Court analyzed Plaintiff's

16

other allegations as follows:

17

> Plaintiff's other allegations are insufficient to state claims for retaliation.

18

> The allegation that Officer Beltran ordered Plaintiff to produce proof that he was
> authorized to wear soft sole shoes before he was permitted to enter the law library,

19

> apparently on a single occasion, is at worst a de minimis infringement of Plaintiff's
> constitutional rights.  See Hernandez v. Denton, 861 F.2d 1421, 1424 (9th Cir.

20

> 1988) (holding that federal courts should avoid interfering in prison administration
> whenever prisoners are inconvenienced or suffer de minimis injuries), vacated on

21

> other grounds and remanded, 493 U.S. 801 (1989), modified on remand, 919 F.2d
> 573 (9th Cir.1990), vacated on other grounds and remanded, 504 U.S. 25, remanded

22

> on remand, 966 F.2d 533 (9th Cir.1992).  Moreover, the facts as alleged do not even
> raise an inference that Officer Beltran acted with an unconstitutional motive on this

23

> occasion.  Plaintiff may assert this claim in an amended complaint only if he can in
> good faith allege that Officer Beltran treated Mr. Williams and him differently from

24

> other inmates in circumstances that suggest Officer Beltran acted with an
> unconstitutional motive, and that this treatment caused Plaintiff harm.  Further,

25

> Plaintiff must exhaust his administrative remedies before returning to federal court
> with this claim.

26

> Plaintiff's allegation that correctional officers intentionally interfere with his

27

> conversations with "tier tenders" lacks sufficient factual detail to state a cognizable
> claim.  Plaintiff alleges that the officers suspect that he is engaged in conversations

28

> about legal matters.  If Plaintiff is not, in fact, engaged in such conversations, the
> interference amounts to mere harassment, which does not arise to the level of a

**United States District Court**
For the Northern District of California

15

1
2
3
4
5
6
7
8

constitutional violation.[2]  If the interference in fact impedes Plaintiff from exercising his First Amendment rights, because it prevents Plaintiff from engaging in discussion necessary to the exercise of those rights, Plaintiff may have a claim if he can also show the interference caused him injury by effectively preventing him from presenting certain claims to the courts.  See Sands v. Lewis, 886 F.2d 1166, 1171 (9th Cir. 1989) (holding that plaintiffs must allege an "actual injury" to court access, consisting of some specific "instance in which an inmate was actually denied access to the courts," to state a claim for infringement of the right to petition the government for redress of grievances).  Similarly, Plaintiff's allegation that prison officials open his legal mail outside his presence is insufficient to state a cognizable claim, absent allegations that this conduct had an unconstitutional chilling effect on his exercise of First Amendment rights.  See note 2, supra.  Plaintiff may assert these claim in an amended complaint if he can make sufficient supporting allegations in good faith and can demonstrate that he has exhausted his administrative remedies on the claims.

9
10
11
12
13
14
15

Finally, Plaintiff alleges that Officer Farias refused to release Plaintiff for his job assignment when other inmates were released and that Plaintiff was excluded from the list of critical culinary workers.  Although the allegation is included among allegations of retaliation for Plaintiff's First Amendment activities, Mr. Williams asserts the disparate treatment was racially motivated.  If Plaintiff alleges invidious racial discrimination, his claim will be cognizable under the Equal Protection clause.  See Wolff v. McDonnell, 418 U.S. 539, 556 (1974) ("Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race.").  If Plaintiff alleges that Officer Farias discriminated against him in retaliation for his exercise of First Amendment rights, Plaintiff must allege a chilling effect or direct injury resulting from the disparate treatment.  Plaintiff must exhaust his administrative remedies before presenting either claim in an amended complaint.

16
(Mar. 30, 2001 Order in Case no. C 00-3030 SBA (PR) at 16-18 (footnote in original).)

17  As mentioned above, Plaintiff fails to name Officer Beltran as a Defendant in his amended

18  complaint; therefore, Plaintiff's retaliatory claim relating to Officer Beltran is DISMISSED with

19  prejudice and without further leave to amend.

20  As to his allegations regarding Defendants' intentionally interfering with his conversations

21  with "tier tenders," Plaintiff has failed to include sufficient factual detail to state a cognizable

22  retaliation claim in his amended complaint.   Similarly, he fails to amend his allegation that

23  Defendants opened his legal mail outside his presence by claiming that this conduct had an

24  unconstitutional effect on his exercise of his First Amendment rights.  Plaintiff also fails to

25
26
27
28

[2] The claim cannot be sustained on the basis that the officers' interference with Plaintiff's conversations had a chilling effect of Plaintiff's exercise of Plaintiff's First Amendment rights, because "an unconstitutional chill will only exist if the government action has injured the individual or places the individual in immediate danger of sustaining a direct injury."  O'Keefe v. Van Boening, 82 F.3d 322, 325 (1996).

1   demonstrate that he has exhausted his administrative remedies on these claims.  Accordingly, these

2   claims are DISMISSED with prejudice and without further leave to amend.

3        Finally, Plaintiff fails to name Officer Farias in his amended complaint; therefore, Plaintiff's

4   retaliatory claim relating to Officer Farias discriminating against him for his exercise of his First

5   Amendment rights is DISMISSED with prejudice and without further leave to amend.

6        **D.    Other Claims in Amended Complaint**

7        Plaintiff attempts to raised new claims against new Defendants in his amended complaint;

8   however, in its March 30, 2001 Order, the Court limited Plaintiff by only giving him leave to amend

9   the above-referenced claims stating: "The amended complaint may not include any additional parties

10  or claims not allowed in this Order without further leave of Court."  (Mar. 30, 2001 Order at 21.)

11  Because the Court did not grant Plaintiff further leave to add any additional parties or claims, the

12  Court need not address the remaining claims in his amended complaint.

13  **III.    Request for Injunctive Relief**

14       In his amended complaint, Plaintiff has also requested "urgent injunctive relief, with respect

15  to all of his legal property that has been in the defendants [sic] direct control and possession since 6-

16  25-2003, causing Plaintiff to suffer [actual and irreparable injuries]."  (Am. Compl. at 44.)  At the

17  time he filed his amended complaint, Plaintiff was incarcerated at High Desert State Prison (HDSP),

18  and he has since been transferred to Kern Valley State Prison (KVSP).  Any claims regarding the

19  conditions of his confinement at either HDSP or KVSP must be filed in the United States District

20  Court for the Eastern District of California, because that is the district in which HDSP and KVSP are

21  located.  Accordingly, the request for injunctive relief is DENIED without prejudice to Plaintiff

22  seeking such relief in the Eastern District.

23       **CONCLUSION**

24       For the foregoing reasons, the amended complaint is DISMISSED for failure to state a

25  cognizable federal claim.  The Clerk shall close the file and terminate all pending motions.

26       IT IS SO ORDERED.

27  DATED:  11/19/09

        _Saundra B Armstrong_
28      SAUNDRA BROWN ARMSTRONG
        United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

HAMILTON,

        Plaintiff,

  v.

HERNANDEZ et al,

        Defendant.
_____/

Case Number: CV02-05602 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on November 20, 2009, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

George  Hamilton K-54885
Kern Valley State Prison
P.O. Box 5104
Delano,  CA 93216

Dated: November 20, 2009

Richard W. Wieking, Clerk
By: LISA R CLARK, Deputy Clerk

**United States District Court**
For the Northern District of California

P:\PRO-SE\SBA\CR.02\Hamilton5602.dismiss.frm 18